

**ORDERED in the Southern District of Florida on February 08, 2011.**

_____
**A. Jay Cristol, Judge
United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov**

IN RE:

LEXI DEVELOPMENT COMPANY, INC.,           CASE NO. 10-27573-BKC-AJC

    Debtor.                                                                          CHAPTER 11
_____/

LEXI DEVELOPMENT COMPANY, INC.,           ADV. NO. 10-3582-BKC-AJC-A

    Plaintiff,

v.

LEXI NORTH BAY, LLC, et al.,

    Defendants.
_____/

**ORDER DENYING LEXI NORTH BAY, LLC'S MOTION TO DISMISS
<u>GREAT FLORIDA BANK'S CROSS-CLAIMS</u>**

**THIS MATTER** came before the Court for hearing on January 26, 2011 upon the

Motion to Dismiss [ECF # 21] (the "Motion) the Cross-Claim [ECF # 15] (the "Cross-Claim") of

Cross-Plaintiff Great Florida Bank ("GFB") filed by Cross-Defendant Lexi North Bay, LLC ("North Bay") pursuant to 12(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure, and GFB's Response [ECF # 35] (the "Response") to the Motion.

The Court having considered the Cross-Claim, the Motion, the Response, the arguments of counsel, and relevant authorities, and being duly advised determines that for the reasons set forth herein, the Cross-Claim states valid claims upon which relief can be granted and the Motion must therefore be **DENIED**.

## BACKGROUND

The Debtor Lexi Development Company, Inc. ("Lexi" or "Debtor") commenced this adversary proceeding to determine validity, priority and extent of liens, naming both North Bay and GFB as defendants based on their competing asserted interests in the Debtor's Property. GFB filed a two-count cross claim against North Bay on November 19, 2010 (the "Cross-Claim") (ECF #15). The Cross-Claim asserted a count for an equitable lien (Count I) and a count for determination of validity, priority and extent of liens (Count II).

## ALLEGATIONS OF THE CROSS CLAIM

On a motion to dismiss, the Court accepts as true the matters alleged. The allegations of GFB's Cross-Claim are as follows:

**The Credit Structures**

The Cross-Claim alleges that during or prior to 2005, Lexi Development Company, Inc. ("Lexi" or the "Debtor") desired to construct a condominium project in Miami-Dade County, Florida (the "Property") (ECF #15, ¶ 7). Construction of the Property was financed by a group of banks led by Regions Bank (collectively, "Regions") with a loan in the principal sum of

$56,875,000 (the "Regions Loan") (*Id*., at ¶ 7(a)).  Additionally, Allen R. Greenwald and Jill F. Greenwald (the "Greenwalds") loaned to Lexi the sum of $6,000,000 (later increased to $8,000,000) pursuant to a promissory note signed by Lexi (a copy of which is attached to Lexi's Complaint as Exhibit "E") (*Id*., at ¶ 7(b))

The Greenwalds borrowed from GFB $6,000,000 to lend to Lexi pursuant to a promissory note signed by the Greenwalds in favor of GFB in the original principal sum of $6,000,000 (*Id*., at ¶ 7(c)).  To secure GFB for the repayment of the $6,000,000 (later increased to $8,000,000), the Greenwalds collaterally assigned to GFB the loan documents obtained by them in connection with the $6,000,000 loan made by them to Lexi (*Id*., at ¶ 7(d)).

**The Inter-Creditor Agreement**

In December 2005, contemporaneous with the closing of the financing described above, the Greenwalds entered into an Inter-Creditor Agreement with Regions (a copy of which is attached to Lexi's Complaint as Exhibit "F"). The Inter-Creditor Agreement provided the terms agreed upon between Regions, as senior lender, and the Greenwalds, as junior secured creditors of Lexi (*Id*., at ¶ 8).

**GFB's Loan is Increased, Subject to Inter-Creditor Rights**

In May 2008, Lexi desired to borrow an additional $2,000,000 from the Greenwalds, who in turn sought to obtain said $2,000,000 from GFB.  Subject to obtaining rights from Regions relative to the Inter-Creditor Agreement, GFB agreed to lend the additional $2,000,000 to the Greenwalds, thereby increasing their indebtedness to GFB from $6,000,000 to $8,000,000. Accordingly, GFB and the Greenwalds entered into an Amended and Restated Loan Agreement dated as of May 31, 2008 and Lexi delivered its Amended and Restated Promissory Note to the Greenwalds (*Id*., at ¶ 9).

Contemporaneous with the Greenwalds' execution and delivery to GFB of the $8,000,000 Amended and Restated Promissory Note, the Greenwalds amended the Collateral Assignment in favor of GFB to reflect that the indebtedness of the Greenwalds to GFB had increased from $6,000,000 to $8,000,000 and that the $8,000,000 note from Lexi to the Greenwalds was assigned to GFB as collateral security (*Id.*, at ¶ 10).

On or about June 20, 2008, an agreement was signed between and among Regions, the Greenwalds, and GFB, which GFB required as part of its agreement to extend credit to the Greenwalds (the "Amended Inter-Creditor Agreement," a copy of which is attached to Lexi's Complaint as Exhibit "H").  Pursuant to the Amended Inter-Creditor Agreement, Regions acknowledged that the loan from the Greenwalds to Lexi had increased from $6,000,000 to $8,000,000, and consented to the assignment to GFB of the rights held by the Greenwalds from Lexi (*Id.*, at ¶ 11).

Regions expressly agreed in the Amended Inter-Creditor Agreement that, in the event notice was given (by Regions) that Regions was claiming a default in the Regions Loan, a copy of such notice of claimed default would be given to GFB, and that GFB would have the right to cure any purported defaults in the Regions Loan, or to acquire Regions' position. Such provisions are highly material to GFB because of its junior position in the collateral (*Id.*, at ¶ 12).

**Regions Defaults the Loan and Sells it to North Bay
In Contravention of GFB's Rights Under the Inter-Creditor Agreement**

Thereafter, on or about October 2008 and thereafter, Regions asserted that Lexi had defaulted on the Regions Loan. However, Regions failed to provide to GFB a copy of any notice of purported default, thereby impairing the ability of GFB to protect its interest, and causing great monetary loss to GFB (*Id.*, at ¶ 13).

Thereafter, on or about January 23, 2009, still without any notice to GFB, Regions sold the Regions Loan to North Bay at a substantial discount (*Id.*, at ¶ 14).

At the time it acquired the Regions Loan, North Bay was aware of GFB's rights under the Amended Inter-Creditor Agreement, and was aware that GFB had not been given notice of a default or an opportunity to cure or purchase the Regions Loan (*Id.*, at ¶ 15).

Pursuant to the purchase agreement between Regions and North Bay, North Bay expressly assumed all of Regions' duties, obligations and responsibilities with respect to the Regions Loan, including the obligations under the Amended Inter-Creditor Agreement (*Id.*, at ¶ 16).

After acquiring the Regions Loan, North Bay proceeded to announce an acceleration of the indebtedness and instituted foreclosure proceedings against Lexi. Once again, North Bay failed to provide notice to GFB or an opportunity to cure or purchase the Regions Loan at its then-current balance (*Id.*, at ¶ 17).

## CONCLUSIONS OF LAW

### I.  Legal Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. U.S.,* 734 F.2d 762, 765 (11th Cir. 1984). Fed.R.Civ.P. 8(a) requires "a short and plain statement of the claims" that will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. Pleadings serve to provide notice to a defendant, not to provide the details that will develop at trial. When considering a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *SEC v. ESM Group. Inc.,*

835 F.2d 270, 272 (11th Cir. 1988). Each claim asserted by GFB in the Cross-Claim satisfies the foregoing standard, and should not be dismissed.

## II.  GFB Sufficiently Alleged a Cause of Action for An Equitable Lien

North Bay's primary argument at hearing was that GFB has not adequately alleged a cause of action for an equitable lien, because: (1) GFB has not adequately alleged the requisite intent to charge the Debtor's Property with a lien; (2) GFB has not alleged sufficiently inequitable conduct to support an equitable lien; and (3) GFB has an adequate remedy at law. The Court rejects each of these arguments.

### A.  Principles of an Equitable Lien

Equitable liens may arise from written contracts which show an intention to charge certain property with a debt or obligation, or they may be declared by a court of equity out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings. *Ross v. Gerung*, 69 So.2d 650, 652 (Fla. 1954). Florida law also provides that equitable liens may be based upon considerations of estoppel or to prevent unjust enrichment. *Tribeca Lending Corp. v. Real Estate Depot, Inc.*, 42 So.3d 258, 262 (Fla. 4th DCA 2010) (citations and quotations omitted). GFB sufficiently alleges in Count I of the Cross-Claim a valid claim for an equitable lien based on contractual as well as equitable considerations.

### B.  Equitable Lien Based on the Inter-Creditor Agreement

A claim for an equitable lien arises when a contract shows the intention to charge some particular property with debt. *Sunshine Meadows Condo. Assoc., Inc. v. Bank One, Dayton, N.A.*, 599 So.2d 1004, 1007 (Fla. 4th DCA 1992). The allegations in the Cross-Claim provide sufficient indicia of the parties' intent to charge the Property. GFB alleges in the Cross-Claim that GFB was to be secured by the Greenwalds' right to receive proceeds from the sales of the

units owned by Lexi (ECF #15, ¶ 21). Furthermore, GFB alleged that North Bay knew or had reason to know that the intended source of repayment to GFB was the Property and that GFB had the right to take over control of the project to protect GFB's economic interest in the event Regions claimed a default on the note and mortgage by Lexi (*Id.*, at ¶ 22). These allegations relate directly to the Property and the parties' intent to charge the Property.

As alleged, the Property was to serve as the collateral from which GFB was could be paid. Although GFB did have a security interest in the stock pledge of Lexi, the parties are alleged to have intended for GFB's debt to be charged against the Property because under the Inter-Creditor Agreement, GFB had the right to purchase the debt upon notice of Lexi's default, and thereby have the same lien rights against the Property as held by North Bay. Moreover, the parties' understanding of the repayment structure and the Inter-Creditor Agreement supports the allegations that the Property was intended to be charged. These alleged facts, viewed as true, demonstrate a sufficient claim for an equitable lien.

### C. Equity Considerations Support the Sufficiency of GFB's Equitable Lien Claim

Equitable liens may also be founded upon a declaration by a court out of general considerations of right or justice as applied to the particular circumstances of a case. *Sunshine*, 599 So.2d at 1007. As alleged, the actions of North Bay and Regions are unjust and the imposition of an equitable lien would place GFB in the status quo absent the conduct of North Bay and Regions. As alleged in the Cross-Claim, Regions and North Bay failed to advise GFB of alleged defaults under the loan documents to give GFB an opportunity to cure or purchase the debt (ECF #15, ¶¶ 13, 17). Also as alleged, GFB was not informed that Regions sold the Regions Loan to North Bay at a substantial discount (ECF #15, ¶ 14). Furthermore, GFB alleged in the Cross-Claim that "[a]t the time [North Bay] acquired the Regions Loan, North Bay was

aware of GFB's rights under the Amended Inter-Creditor Agreement, and was aware that GFB had not been given notice of default or an opportunity to cure or purchase the Regions Loan" (ECF #15, ¶ 15). North Bay nonetheless proceeded to accelerate the loan and pursue foreclosure, without notice to GFB. Although equitable liens are typically imposed on the basis of fraud or misrepresentation, other equitable circumstances, such as those alleged by GFB, can be proper grounds for imposing equitable liens. *Spridgeon v. Spridgeon*, 779 So.2d 501, 502 (Fla. 2d DCA 2000).

North Bay argued that *In re Alford*, 403 B.R. 123 (Bankr. M.D. Fla. 2009) supports its position that GFB has failed to sufficiently allege facts to support a claim for an equitable lien based on equitable considerations. However, North Bay's reliance on *Alford* is misplaced. First, the procedural posture in *Alford* differed drastically. The court did not dismiss the equitable lien claim, but determined after analyzing facts at a two-day trial that insufficient grounds existed to impose an equitable lien. *Id.* at 126. The court determined that the debtor's alleged bad acts didn't rise to the level of "reprehensible conduct" because the debtor provided undisputed, credible evidence that the price the assets sold for was a fair price at the time. *Id.* at 134-35. Essentially, it was a fact issue and fact issues are not appropriately determined on a motion to dismiss.

### D. GFB Has No Adequate Remedy at Law

The Court further finds that GFB sufficiently alleged in the Cross-Claim that it does not have an adequate remedy at law. GFB alleges:

> Accordingly, North Bay, standing in the shoes of Regions, cannot take advantage of Region's impropriety, and GFB has no remedy at law which would be as full, just and adequate as would be the imposition of an equitable lien upon the subject property, prior in right, title, interest and equity to any claim of North Bay.

(ECF #15, ¶ 23).  To survive a motion to dismiss for failure to state a claim, GFB need only sufficiently allege that it does not have an adequate remedy at law.  The authority relied upon by North Bay in the Motion is inapposite.  Compare *Marshall v. Scott*, 277 So. 2d 546, 547 (Fla. 2d DCA 1973) (allegations were insufficient because the plaintiff did not even allege the lack of a remedy at law).  Here, along with alleging an inadequate remedy at law, GFB alleged that North Bay's actions, as successor in interest, surpassed a typical breach of contract claim because damages stemming from a breach of contract claim would be insufficient under these circumstances, particularly in light of the implications of control over the mortgage debt in connection with the pending and ongoing Chapter 11 case.

Specifically, GFB alleged that North Bay "violated the Amended Inter-Creditor Agreement and destroyed GFB's right to notice, opportunity to cure and opportunity to take control of the project."  Cross-Claim, ¶ 23.  Damages flowing from a breach of contract claim will not compensate GFB for depriving it of control over the project.  Moreover, damages will not restore GFB to the status quo.  Thus, GFB has sufficiently alleged that it lacks a sufficient and adequate remedy at law.

### III. The Claim is Not Subject to Dismissal on Waiver Grounds

In the Motion, North Bay also sought to dismiss Counts I and II of the Cross-Claim because of an alleged waiver by GFB.  Although raised in the Motion, North Bay failed to address this issue during oral argument.  Even if North Bay would have advanced its waiver argument during oral argument, the Court finds that the argument lacks merit.  Waiver is merely an affirmative defense.  *See* Fed. R. Civ. P. 8(c)(1).  The affirmative defense of waiver will not support the granting of a motion to dismiss.  *See In re W. Allen Young & Assocs., Inc.*, 15 B.R. 20, 22 (Bankr. M.D. Fla. 1981) (denied defendants motion to dismiss based allegedly on waiver

provision in contract because waiver is an affirmative defense). An affirmative defense is not properly raised by a motion to dismiss, but should be pled as part of an answer. *Sunny Coral Mgmt., LLC v. Value Dining Inc.*, 2008 WL 5191466 *2, n. 2 (S.D. Fla. Dec. 10, 2008) *citing Diaz v. Bravo*, 603 So.2d 106, 107 (Fla. 3d DCA 1992); *see also In re Donner*, 364 So.2d 757, 759 (Fla. 3d DCA 1978) (trial court could not dismiss complaint on the ground of an affirmative defense). Moreover, North Bay attempts to rely on a waiver that is contained within the Inter-Creditor Agreement which North Bay itself is accused of breaching. The Court does not find that the Cross-Claim is subject to dismissal on the basis of waiver.

## CONCLUSION

For the foregoing reasons, the Court finds that GFB has adequately alleged causes of action for equitable lien and for determination of validity, priority and extent of liens in Counts I and II of its Cross-Claim. Accordingly, it is –

**ORDERED AND ADJUDGED** that the Motion to Dismiss is DENIED and Cross-Defendant Lexi North Bay, LLC. shall file an answer to the Cross-Claim within fourteen (14) days from entry of this Order.

###

SUBMITTED BY:
David L. Rosendorf, Esq.
Counsel for Great Florida Bank
KOZYAK TROPIN & THROCKMORTON, P.A.
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
dlr@kttlaw.com

COPIES FURNISHED TO:
David L. Rosendorf, Esq.

[Attorney Rosendorf is hereby directed to serve a copy of this Order upon all parties in interest and to file a certificate of service of same.]

3423.102/321674.2                                   10